**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| **v.** ) | **Criminal No. 1:99-cr-467** |
| ) | **Civil Action No. 1:16-cv-788** |
| **TYLAN TREMAINE AUTREY** ) | |

**MEMORANDUM OPINION**

At issue in this kidnapping case is defendant's petition to set aside and correct his sentence pursuant to 28 U.S.C. § 2255 and the Supreme Court's recent decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015).

On February 15, 2000, defendant pled guilty to one count of kidnapping, in violation of 18 U.S.C. § 1201. Thereafter, on April 21, 2000, defendant received a sentence of 262 months' imprisonment as a career offender because defendant's kidnapping offense constitute a "crime of violence," and because defendant had at least two prior convictions for "controlled substance offense[s]" or crimes of violence pursuant to the United States Sentencing Guidelines ("U.S.S.G.") §§ 4B1.1 & 4B1.2.

Over 15 years later, defendant has moved pursuant to 28 U.S.C. § 2255 to vacate and correct his sentence on the ground that the Supreme Court's decision in *Johnson* operates to invalidate U.S.S.G. § 4B1.2's residual clause. A hearing on the motion is unnecessary because the matter has been fully briefed and the facts and law are fully set forth in the existing record, and because "the motion and the files of the case conclusively show that the prisoner is entitled to no relief[.]" 28 U.S.C. § 2255(b).

Accordingly, the matter is now ripe for disposition and must be denied.

**I.**

In July 1999, defendant and a confederate carjacked and kidnapped a woman in Fairfax County, Virginia. Defendant drove the victim to the District of Columbia and there ordered her to exit her car. Defendant then drove the vehicle to Texas, where he and his confederate were arrested. Thereafter, a grand jury indicted defendant on one count of kidnapping in violation of 18 U.S.C. § 1201(a) and one count of interstate transportation of a stolen vehicle in violation of 18 U.S.C. § 2312. On February 15, 2000, defendant pled guilty to the kidnapping charge. At sentencing on April 21, 2000, defendant received a sentence of 262 months' imprisonment, a sentence at the bottom of the Guidelines range after applying § 4B1.1's career offender sentencing enhancement.

In the course of the sentencing hearing, defendant was deemed a career offender pursuant to § 4B1.1 because his instant offense, kidnapping, was a crime of violence, and because he had prior convictions for at least one "controlled substance offense" and one "crime of violence" as defined by the then-mandatory Guidelines. *See* U.S.S.G. §§ 4B1.1 & 4B1.2.[1] Specifically, the Guidelines at the time defined a "crime of violence" as

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that –
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another.*

U.S.S.G. § 4B1.2 (1998). The first clause in subsection (1) is commonly referred to as the "force clause," whereas the italicized clause in subsection (2) is commonly referred to as the "residual

---

[1] The Guidelines became advisory following the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005).

2

clause." *See Beckles v. United States*, 137 S. Ct. 886, 891 (2017). The term, "physical force," as used in § 4B1.2's force clause means "force capable of physical pain or injury to another person." *Curtis Johnson v. United States*, 559 U.S. 133, 140 (2010) ("*Curtis Johnson*").

Specifically, the Presentence Investigation Report prepared in this case reflected (1) that defendant's kidnapping conviction constituted a crime of violence under § 4B1.2, (2) that defendant had a prior "controlled substance offense" conviction for possessing with intent to distribute cocaine, and (3) that defendant had previously committed a "crime of violence" by violating Virginia's maiming statute, Va. Code § 18.2-51.[2] Accordingly, defendant's mandatory Guidelines range was 262 to 327 months' imprisonment. Without the career offender finding, defendant's Guidelines range would have been 120 to 150 months' imprisonment. Defendant's sentence of 262 months of imprisonment thus represented the bottom of the Guidelines range for his kidnapping conviction and career offender enhancement.

Fifteen years after defendant's conviction became final, the Supreme Court issued its decision in *Johnson v. United States*, addressing the definition of a "violent felony" in the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). *See* 135 S. Ct. 2551. There, the Supreme Court held that the ACCA's residual clause—the provision that defines a "violent felony" to include offenses that "involve[] conduct that presents a serious potential risk of physical injury to another"[3]—is unconstitutionally vague, and that "imposing an increased sentence under the residual clause of the [ACCA] violates the Constitution's guarantee of due process." *Johnson*, 135 S. Ct. at 2563. Thereafter, on April 18, 2016, the Supreme Court held that *Johnson*

---

[2] Defendant, in addition to the kidnapping offense in this case, also had prior convictions for (1) a 1993 robbery in California, in violation of Cal. Penal Code § 211; (2) a 1993 burglary in California, in violation of Cal. Penal Code § 459; and (3) a 2000 burglary in Virginia, in violation of Va. Code § 18.2-91.

[3] 18 U.S.C. § 924(e)(2)(B)(ii).

3

announced a new "substantive rule that has retroactive effect in cases on collateral review." *Welch v. United States*, 136 S. Ct. 1257, 1268 (2016).

On April 26, 2016, defendant filed a letter asking for "review" of his conviction and sentence. Subsequently, defendant was appointed counsel, and on June 26, 2016, counsel filed a § 2255 motion defendant's behalf. Defendant contends in his motion that *Johnson* operates to invalidate his sentence insofar as the Supreme Court's decision undermined the residual clause of U.S.S.G. § 4B1.2.

The day after defense counsel filed this § 2255 motion, on June 27, 2016, the Supreme Court granted *certiorari* in *Beckles v. United States* to address (1) whether the holding of *Johnson* applies to the residual clause of U.S.S.G. § 4B1.2, which is identical to the ACCA residual clause invalidated in *Johnson*,[4] and (2) whether *Johnson* applies retroactively to collateral challenges to federal sentences enhanced pursuant to the residual clause of U.S.S.G. § 4B1.2. *See Beckles*, 136 S. Ct. 2510, No. 15-8544 (June 27, 2016). Thereafter, on July 15, 2016, the government moved for an order holding defendant's motion in abeyance pending the Supreme Court's decision in *Beckles*, which motion was granted. Several months later, the Supreme Court issued its *Beckles* opinion, concluding that "the *advisory* Sentencing Guidelines are not subject to a due process vagueness challenge" and thus § 4B1.2's "residual clause is not void for vagueness" in the context of advisory Guidelines. 137 S. Ct. at 897 (emphasis added).

Because the Supreme Court did not address *mandatory* Guidelines, defendant argues that *Beckles* is inapplicable and that his prior convictions for "crimes of violence" cannot constitutionally function as predicate offenses for his sentence enhancement. In defendant's

---

[4] The 2006 version of the U.S.S.G. § 4B1.2(a) analyzed in *Beckles* is identical to the version applicable to defendant's sentence. *See Beckles*, 137 S. Ct. at 890-91 (quoting the 2006 version of U.S.S.G. § 4B1.2).

view, *Johnson*'s reasoning regarding the ACCA's residual clause renders unconstitutional § 4B1.2's residual clause. In this regard, defendant asserts that none of his convictions qualifies as a crime of violence pursuant to § 4B1.2's force clause, and that therefore his career offender classification depends on the unconstitutional residual clause.

In response, the government has offered several procedural and substantive arguments, contending, *inter alia*, that defendant's § 2255 motion is barred by the one-year statute of limitations set forth in 28 U.S.C. § 2255(f).

For the reasons that follow, defendant's motion must be denied.

**II.**

To begin with, the government correctly observes that defendant's § 2255 motion is tardy. Specifically, the government asserts that because defendant filed his § 2255 motion almost two decades after his kidnapping conviction and sentence became final, the motion is barred by the one-year limitations period set forth in 28 U.S.C. § 2255(f)(1). Defendant seeks to avoid this result by arguing that his June 26, 2016 motion is timely pursuant to 28 U.S.C. § 2255(f)(3), which opened a one-year limitations period from June 26, 2015, the date *Johnson* was decided. This argument fails.[5]

Section 2255(f)(3) provides that a one-year limitations period runs from "the date on which the right asserted [by the movant] was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3).[6] In this regard, the Fourth Circuit has

---

[5] On May 11, 2017, the Fourth Circuit heard oral argument on a case presenting this same question. *See United States v. Thilo Brown*, No. 16-7056.

[6] *See also Dodd v. United States*, 545 U.S. 353, 357-58 (2005) (explaining that the § 2255(f)(3) limitations period runs from the date on which the Supreme Court recognizes the new right, not

5

explained that a movant invoking § 2255(f)(3) must establish the following:

> (1) that the Supreme Court recognized a new right;
>
> (2) that the right 'has been … made retroactively applicable to cases on collateral review'; and
>
> (3) that [the movant] filed his motion within one year of the date on which the Supreme Court recognized the right.

*United States v. Mathur*, 685 F.3d 396, 398 (4th Cir. 2012) (quoting § 2255(f)(3)). Notably, the statute explicitly requires that the new right be recognized by the Supreme Court itself before a movant may properly invoke § 2255(f)(3). In other words, it is for the Supreme Court, not an "inferior court,"[7]—that is, a federal appellate or district court—to recognize the new right and to make it retroactive on collateral review for purposes of § 2255(f)(3). In the Fourth Circuit's words, § 2255(f)(3) "does not authorize [a lower court] to read between the lines of a prior opinion [by the Supreme Court] to discern whether that opinion, by implication, made a new rule retroactively applicable on collateral review." *Mathur*, 685 F.3d at 401 (holding that a § 2255 motion was time-barred). Simply put, defendant's argument fails because *Johnson* announced no new right applicable to the mandatory Guidelines.

To be sure, embedded in the parties' dispute on timeliness is a question about the meaning of the term "right" as used in § 2255(f)(3). On one hand, the term "right" may be construed broadly—for instance, the "right" announced by the Supreme Court in *Johnson* could be the fundamental prohibition against unconstitutional vagueness in criminal statutes. On the other hand, the term "right" as used in § 2255(f)(3) may refer instead to the narrow *rule*

---

the date on which the Court makes the right "retroactive[]").

[7] *See* U.S. Const. art. III § 1 ("The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish.").

6

announced in a Supreme Court case—for example, *Johnson*'s holding that the ACCA residual clause is unconstitutionally vague. Consistent with the Supreme Court's decision in *Teague v. Lane*, 489 U.S. 288 (1989), and well-reasoned circuit court opinions, the narrower reading is the correct interpretation of the term "right" in § 2255(f)(3). *See, e.g.*, *Headbird v. United States*, 813 F.3d 1092, 1094 (8th Cir. 2016). Thus, the term "right" in § 2255(f)(3) is properly interpreted as analogous to a "new rule" in the *Teague* context. *See* 813 F.3d at 1094 ("[I]t seems unlikely that Congress meant to trigger the development of a new body of law that distinguishes rights that are 'newly recognized' from rights that are recognized in [a] 'new rule' under established retroactivity jurisprudence."); *Mitchell v. United States*, No. 3:00-cr-00014, 2017 WL 2275092, at *3 (E.D. Va. May 24, 2017) (holding that "a right under § 2255(f)(3) must be analogous to a 'new rule' under *Teague v. Lane*" (citing *United States v. Cuong Gia Le*, 206 F. Supp. 3d 1134 (E.D. Va. 2016)).

Given this, it is clear that *Johnson* did not establish a new "right" applicable to defendant or the mandatory Guidelines. Defendant's § 2255 motion instead asks a lower court to create a new right by announcing that *Johnson* extends to mandatory Guidelines. But announcing such a right is the province of the Supreme Court, not "an inferior court." *See* U.S. Const. art. III § 1; 28 U.S.C. § 2255(f)(3); *Mathur*, 685 F.3d at 398. Indeed, the Supreme Court's holding in *Johnson* is limited to the ACCA and did not extend to other statutes or the Guidelines. After all, the Supreme Court in *Welch* described the right announced in *Johnson* as having "changed the substantive reach of the [ACCA], altering the range of conduct or the class of persons that the Act punishes." *Welch*, 136 S. Ct. at 1265 (quotation marks omitted). Further undermining defendant's argument is the fact that Justice Sotomayor, in her *Beckles* concurrence, noted that the majority opinion "leaves open" the question whether mandatory Guidelines are subject to

7

void-for-vagueness challenges, noting instead that she, "like the majority, t[ook] no position" on that question. *Beckles*, 137 S. Ct. at 903 n.4 (Sotomayor, J., concurring). Because, even after *Johnson*, that question remains "open," defendant's motion, by definition, cannot rely on a new right "recognized by the Supreme Court." 28 U.S.C. § 2255(f)(3).

The Supreme Court's *Teague* framework confirms the conclusion that defendant does not rely on an existing rule of constitutional law, but instead requests a lower court to flout § 2255(f)(3), leap frog the Supreme Court, and recognize a new rule. As the Supreme Court in *Teague* stated, "[A] case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final." 489 U.S. at 301. A rule is "new"— that is, not dictated by precedent—if it is "susceptible to debate among reasonable minds," *Butler v. McKellar*, 494 U.S. 407, 415 (1990), and not "apparent to all reasonable jurists," *Chaidez v. United States*, 568 U.S. 342, 133 S. Ct. 1103, 1107 (2013) (quotation marks omitted). Here, whether *Johnson* applies to mandatory Guidelines is a question "susceptible to debate among reasonable minds," *Butler*, 494 U.S. at 415, that prompts answers not "apparent to all reasonable jurists," *Chaidez*, 133 S. Ct. at 1107. Indeed, courts asking this question have reached disparate conclusions despite rigorous and thoughtful analysis.[8] Even appellate judges within the same circuit have vehemently disagreed on the correct answer. *Compare In re Griffin*, 823 F.3d 1350 (11th Cir. 2016) (holding that *Johnson* was not retroactive in cases involving challenges to mandatory Guidelines), *with In re Sapp*, 827 F.3d 1334, 1336-41 (11th Cir. 2017) (Jordan,

---

[8] *Compare Mitchell*, 2017 WL 2275092 (concluding that *Johnson* did not announce a new right applicable to mandatory Guidelines), *United States v. Russo*, No. 8:03CR413, 2017 WL 1533380 (D. Neb. Apr. 27, 2017) (same), *Hodges v. United States*, No. C16-1521JLR, 2017 WL 1652967 (W.D. Wash. May 2, 2017) (same), *appeal docketed*, No. 17-35408 (9th Cir. May 12, 2017), *Cottman v. United States*, No. 8:02-CR-397-T-24TBM, 2017 WL 1683661 (M.D. Fla. May 3, 2017) (same), *with Reid v. United States*, --- F. Supp. 3d ---, 2017 WL 2221188 (D. Mass. May 18, 2017) (holding that *Johnson* applies to the mandatory Guidelines).

Rosenbaum & Pryor, JJ., concurring) (articulating seven reasons to believe that *Griffin* was "wrongly decided"). Thus, to conclude here that *Johnson* extends to and invalidates § 4B1.2's residual clause is to recognize a "new" rule—something that only the Supreme Court may do in this context. Defendant's motion is therefore untimely.

Seeking to avoid this result, defendant relies on *In re Hubbard*, 825 F.3d 225 (4th Cir. 2016), a case in which the Fourth Circuit authorized a successive § 2255 petition challenging the mandatory Guidelines on *Johnson* grounds. *See* 28 U.S.C. § 2244(b) (permitting an appellate court to grant a successive petition if the petitioner makes a "prima facie showing" that the application relies on a "new rule of constitutional law"). Defendant contends that the *Hubbard* court's decision to grant a successive petition is dispositive here. It is not. As *Hubbard* itself noted, the successive authorization inquiry does not ask whether the movant "will ultimately prevail on his claim." *Hubbard*, 825 F.3d at 229. Rather, a movant seeking to file a successive petition need only make a "prima facie showing," *id.*, at which the appellate court "glance[s]," *id.* at 232. And if there were any doubt, the *Hubbard* court explicitly concluded that "it is for the district court to determine whether the new rule [in *Johnson*] extends to the movant's case, not for [the Fourth Circuit] in this [authorization] proceeding." *Id.* at 231. Accordingly, the Fourth Circuit's preliminary decision authorizing a successive petition in *Hubbard* does not relieve district courts of the duty independently to review a § 2255 motion. And as the foregoing analysis demonstrates, the instant motion is untimely and must be denied.

Defendant's § 2255 motion therefore fails.[9]

---

[9] To be sure, petitioners sentenced under the mandatory Guidelines may bring future § 2255 motions if the Supreme Court ultimately announces that § 4B1.2's residual clause in the mandatory Guidelines is unconstitutionally vague and makes that rule retroactive on collateral review.

9

**III.**

Although defendant's motion is untimely, it is worth addressing two of defendant's merits arguments. First, defendant contends that the federal kidnapping statute, 18 U.S.C. § 1201, does not categorically require the use or threatened use of violent force, and that therefore federal kidnapping is not a "crime of violence" under § 4B1.2's force clause. *See* U.S.S.G. § 4B1.2(1) (defining a "crime of violence" as one that "has as an element the use, attempted use, or threatened use of physical force against the person of another"). Second, defendant raises the same argument regarding the Virginia maiming statute, Va. Code. § 18.2-51, contending that his "conviction for maiming is categorically not a crime of violence." *See* D. Reply (Doc. 61).[10]

**A.**

To analyze these arguments, it is first necessary to set forth the applicable legal principles. To determine whether a prior conviction qualifies as a crime of violence, courts typically apply the "categorical approach" developed in *Taylor v. United States*, 495 U.S. 575, 598-602 (1990). *See, e.g.*, *Castendet-Lewis v. Sessions*, 855 F.3d 253, 261 (4th Cir. 2017). Under this approach, a sentencing court considers an offense generically, looking "'only to the statutory definitions'—*i.e.*, the elements—of a defendant's prior offenses and *not* 'to the particular facts underlying those convictions'" in determining whether the prior offense constitutes a predicate offense crime of violence. *Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013) (quoting *Taylor*, 495 U.S. at 600). Put another way, "[A] court assesses whether a crime qualifies as a violent felony in terms of how the law defines the offense and not in terms of how an individual

---

[10] In some respects, the legal arguments involving *Johnson* and similar cases may have become so esoteric as to outpace common sense. Only lawyers could sincerely question whether "maiming" is a "crime of violence." This is ironical, of course, because a fundamental premise of the void-for-vagueness doctrine is to ensure that "ordinary people" have "fair notice" of prohibited conduct. *See Johnson*, 135 S. Ct. at 2556.

offender might have committed it on a particular occasion." *Johnson*, 135 S. Ct. at 2557 (quotation marks omitted). In doing so, federal courts apply the relevant state decisional law to state crimes. *United States v. Winston*, 850 F.3d 677, 684 (2017) ("[A] federal court applying the categorical approach to a state offense is bound by the interpretation of such offense articulated by that state's courts."). For an offense to constitute a "crime of violence" under the categorical approach, "the offense's full range of proscribed conduct, including the least culpable proscribed conduct, must fall within the applicable Guidelines definition of that term." *United States v. King*, 673 F.3d 274 (278) (4th Cir. 2012).

Yet, the categorical approach is not always required; a sentencing court may apply a *modified* categorical approach to statutes that are "divisible" insofar as "they set out elements in the alternative and thus create multiple versions of the crime." *Omargharib v. Holder*, 775 F.3d 192, 197-98 (4th Cir. 2014) (quotation marks omitted); *see also Castendet-Lewis*, 855 F.3d at 261. Of course, determining whether a statute is divisible requires courts to distinguish between elements of the crime and facts supporting a conviction. As the Supreme Court has stated, "[E]lements are the constituent parts of a crime's legal definition—the things the prosecution must prove to sustain a conviction." *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016). Put differently, an element is "what the jury must find beyond a reasonable doubt to convict the defendant" and "what the defendant necessarily admits when he pleads guilty." *Id.* By contrast, facts are "mere real-world circumstances or events having no legal effect or consequence." *Castendet-Lewis*, 855 F.3d at 261 (quoting *Mathis*, 136 S. Ct. at 2248) (brackets omitted). In other words, "Statutes that 'enumerate various factual means of committing a single element,' rather than statutes that 'list multiple elements disjunctively,' are indivisible." *Id.* (quoting *Mathis*, 136 S. Ct. at 2249) (brackets omitted).

11

If a statute is divisible, and thus the modified categorical approach applies, then "courts may look beyond the statutory text and consult a limited set of documents in the record" in order to determine the nature of the crime charged. *Omargharib*, 775 F.3d at 198. Relevant documents include the "charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms." *Curtis Johnson*, 559 U.S. at 144.

**B.**

Defendant's first argument is that his kidnapping conviction is not a "crime of violence" under § 4B1.2's force clause and that therefore his sentencing enhancement depends on § 4B1.2's unconstitutional residual clause. This argument may well succeed if the Supreme Court extends *Johnson* to the mandatory Guidelines.

To begin with, the kidnapping statute, § 1201(a), punishes anyone who:

> unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person ... when the person is willfully transported in interstate or foreign commerce[.]

18 U.S.C. § 1201(a). The parties do not posit that this statute is divisible. Rather, they agree that "[t]o establish a violation of § 1201(a), the government must prove that 1) the victim was seized, confined, inveigled, decoyed, kidnapped, abducted, or carried away; 2) the victim was held; and 3) federal jurisdiction," that is, that the victim was transported in interstate or foreign commerce. *United States v. Wills*, 234 F.3d 174, 177 (4th Cir. 2000). Furthermore, the government concedes that the first element may be accomplished without force.

The parties disagree, however, whether a defendant necessarily uses (or threatens to use) violent force to "hold" the kidnapped victim. *See id.* The government notes that, according to the Fourth Circuit, "to hold" in this context "means to detain, seize, or confine a person in some

manner against that person's will." *United States v. Wills*, 346 F.3d 476, 493 (4th Cir. 2003). The government further urges that because the Supreme Court's has observed that the "involuntariness of seizure and detention … is the very essence of the crime of kidnaping," a kidnapper cannot hold his victims against their wills without at least a threatened use of force. *See Chatwin v. United States*, 326 U.S. 455, 460 (1946) (interpreting a predecessor statute to 18 U.S.C. § 1201). In response, defendant points to the Seventh Circuit's recent decision in *United States v. Jenkins*, 849 F.3d 390 (7th Cir. 2017), which held that federal kidnapping is not categorically a crime of violence. The Seventh Circuit concluded that "holding can be accomplished without physical force," because, assuming the victim has traveled across state lines, a perpetrator would be guilty if he "lure[d] his victim into a room and lock[ed] the victim inside against his or her will." 849 F.3d at 393.

Given this, it appears that kidnapping in violation of 18 U.S.C. § 1201 would not qualify as a crime of violence pursuant to U.S.S.G. § 4B1.2's force clause. Indeed, the Supreme Court in *Chatwin*—a case on which the government relies—noted that "[t]he act of holding a kidnapped person for a proscribed purpose necessarily implies an unlawful physical *or mental restraint* for an appreciable period against the person's will …." 326 U.S. at 460 (emphasis added). In fact, the *Chatwin* Court concluded that "[i]f the victim is of such an age or mental state as to be incapable of having a recognizable will, the confinement then must be against the will of the parents or legal guardian of the victim." *Id.* Thus, it follows that the victim—perhaps an infant—may not need to be threatened with force, or even be aware of the restraint, for a kidnapper to violate § 1201. Similarly, it is not difficult to imagine a kidnapper who lures a child across state lines and "holds" the child by entertaining and distracting the unwitting victim, against the parent's will.[11]

---

[11] Circuit courts appear to have differing views of the federal kidnapping statute. *Compare*

13

## C.

Defendant's second argument is that a violation of the Virginia maiming statute, Va. Code § 18.2-51, is not categorically a crime of violence under U.S.S.G. § 4B1.2's force clause. The statute provides:

> If any person maliciously shoot, stab, cut, or wound any person or by any means cause him bodily injury, with the intent to maim, disfigure, disable, or kill, he shall, except where it is otherwise provided, be guilty of a Class 3 felony. If such act be done unlawfully but not maliciously, with the intent aforesaid, the offender shall be guilty of a Class 6 felony.

Va. Code § 18.2-51. A Class 3 felony is punishable by a term of imprisonment between five and 20 years, and a Class 6 felony is punishable by a term of imprisonment between one and five years. *Id.* § 18.2-10. This argument fails.

The parties dispute whether § 18.2-51 is divisible and whether the modified categorical approach applies. Several courts in this district have noted that the maiming statute is divisible, and the Supreme Court of Virginia itself has stated that "[t]o 'shoot, stab, cut or wound,' under [§ 18.2-51] comprise distinct offenses, and to cause bodily injury is likewise a distinct offense.'" *Dawkins v. Commonwealth*, 186 Va. 55, 64 (1947) (citing *Johnson v. Commonwealth*, 184 Va. 409, 416 (1945)); *see also Al-Muwwakkil v. United States*, No. 4:01cr92, 2017 WL 745563, at *5 (E.D. Va. Feb. 24, 2017) (concluding that § 18.2-51 is divisible into four separate crimes and collecting cases so holding). Courts have generally concluded that the statute is divisible into four crimes: (1) malicious wounding; (2) maliciously causing bodily injury; (3) unlawful wounding; and (4) unlawfully causing bodily injury. *See, e.g.*, *Al-Muwwakkil*, 2017 WL 745563,

---

*United States v. Patino*, 962 F.2d 263, 267 (2d Cir. 1992) ("That the crime of kidnapping involves the threatened use of physical force against a person and is thus a crime of violence[.]"), *with Delgado-Hernandez v. Holder*, 697 F.3d 1125, 1130 (9th Cir. 2012) ("The federal kidnapping statute has no force requirement[.]"). And the Fourth Circuit has held in abeyance a case involving the issue presented here. *See United States v. Walker*, No, 15-4301.

at *5. Defendant, on the other hand, contends that § 18.2-51 is divisible only in two: between "malicious" and "unlawful" conduct. Defendant asserts that the statute is not further divisible between "bodily injury" and "wounding" because the former concept subsumes the latter. But because the verdict form on defendant's § 18.2-51 conviction reflects that he was convicted of unlawfully causing bodily injury, this point is academic in defendant's case. The least culpable proscribed conduct under the categorical approach and defendant's conviction are the same: unlawfully causing bodily injury.

The least culpable proscribed conduct here, unlawfully causing bodily injury, is categorically a crime of violence under U.S.S.G. § 4B1.2's force clause. Indeed, § 4B1.2(1) defines "crime of violence" as one that "has as an element the use, attempted use, or threatened use of physical force against the person of another." And "physical force," as used in this context, is "force capable of causing pain or injury to another person." *See Curtis Johnson*, 559 U.S. at 140 (defining the definition of "physical force" under ACCA's force clause). That definition squares with the Virginia maiming statute, Va. Code § 18.2-51, which (1) defines "bodily injury" as including "any bodily hurt"[12] that "could fairly be considered an injury to the human body"[13] and (2) requires proof that the defendant caused such bodily injury "with the intent to maim, disfigure, disable, or kill."[14] Thus, unlawfully causing bodily injury in violation

---

[12] *Ricks v. Commonwealth*, 290 Va. 470, 477-78 (2015) (quoting *Bryant v. Commonwealth*, 189 Va. 310, 316 (1949)).

[13] *English v. Commonwealth*, 58 Va. App. 711, 719 (2011); *see also Ricks*, 290 Va. at 479 (relying on the Virginia maiming statute, § 18.2-51, to conclude that the term, "bodily injury," in Virginia's strangulation statute, § 18.2-51.6 "is [1] an act of damage or harm or hurt that relates to the body; [2] is an impairment of a function of a bodily member, organ, or mental faculty; or [3] is an act of impairment of a physical condition").

[14] Va. Code § 18.2-51. Indeed, even if a defendant lacks "malice," that defendant violates the Virginia maiming statute only if he causes bodily injury with "intent to maim, disfigure, disable,

of Va. Code § 18.2-51 necessarily involves the use, attempted use, or threatened use of physical force against the person of another. In other words, a violation of Va. Code § 18.2-51 is categorically a crime of violence under the force clause of U.S.S.G. § 4B1.2.

In opposition to this conclusion, defendant contends that because § 18.2-51 prohibits causing bodily "by any means," it is conceivable that an offender could violate the statute through indirect force, without the requisite "force capable of causing pain or injury to another person." *See Curtis Johnson*, 559 U.S. at 140. In this respect, defendant relies on the Fourth Circuit's decision in *United States v. Torres-Miguel*, 701 F.3d 165 (4th Cir. 2012), which held that "a crime may result in death or serious injury without involving the use of physical force." 701 F.3d at 168-69. Specifically, the *Torres-Miguel* court addressed whether a defendant's prior conviction under a California statute warranted a sentencing enhancement pursuant to U.S.S.G. § 2L1.2 insofar as the prior crime had an element of "violent force."[15] *Id*. at 167. The relevant California statute required proof that the defendant willfully threatened to commit a crime that "will result in death or great bodily injury to another." *Id*. at 168 (citing Cal. Penal Code

---

or kill." *Id.* In this respect, it is worth noting that "malice" differs from "intent to maim, disfigure, disable, or kill." In Virginia, malice is "evidenced either when the accused acted with a sedate, deliberate mind, and formed design, or committed a purposeful and cruel act without any or without great provocation." *Witherow v. Commonwealth*, 65 Va. App. 557, 566 (2015) (quoting *Robertson v. Commonwealth*, 31 Va. App. 814, 823 (2000) (interpreting Va. Code § 18.2-51). Importantly, Virginia law recognizes that "[d]eliberate and purposeful acts may … be done without malice if they are done in the heat of passion." *Id.* (quoting *Williams v. Commonwealth*, 64 Va. App. 240, 249 (2015). In other words, Virginia recognizes that intent may be formed in an instant. Thus, regardless whether defendant acts "maliciously" or "unlawfully," the Virginia maiming statute always requires "intent to maim, disfigure, disable, or kill." Va. Code § 18.2-51; *cf.* Va. Code. 18.2-41 (Virginia's "maiming by mob" statute, which similarly prohibits "maliciously *or* unlawfully … caus[ing] bodily injury" to another person but requires in any event "intent to maim, disable, disfigure, or kill").

[15] That Guidelines provision defines "[c]rime of violence" as an "offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 2L1.2.

§ 422(a)). The Fourth Circuit held that the California offense lacked a "violent force" element, and therefore did not qualify as a "crime of violence" for sentencing purposes because the threat of *any bodily injury*, "even serious bodily injury or death," does not necessarily require the use of physical force, let alone "violent force." *Id*. at 168-69. As an example, the Fourth Circuit noted that a defendant could violate the California statute "by poisoning another, which involves no use or threatened use of force." *Id*. (citing *United States v. Cruz-Rodriguez*, 625 F.3d 274, 276 (5th Cir. 2010)).

Defendant's argument and reliance on *Torres-Miguel* is unpersuasive because, as several courts have recognized, the Supreme Court recently rejected the rationale of that case. *See United States v. Castleman*, 134 S. Ct. 1405, 1415 (2014); *see also In re Irby*, --- F.3d ---, 2017 WL 2366996 at *6 (4th Cir. June 1, 2017) (recognizing that *Castleman* rejected *Torres-Miguel*'s logic).[16] At issue in *Castleman* was a "crime of domestic violence" statute, which included as an element "the use or attempted use of physical force." 134 S. Ct. at 1407 (quoting 18 U.S.C. § 921(a)(33)(A)(ii)). The defendant in *Castleman* argued that "although poison may have forceful physical properties as a matter of organic chemistry, … no one would say that a poisoner employs force or carries out a purpose by means of force when he or she sprinkles poison in a victim's drink." *Id*. at 1415 (quotation marks omitted). The Supreme Court squarely rebuffed this argument, reasoning that "[t]he use of force … is not the act of sprinkling the poison" but rather "the act of employing poison knowingly as a device to cause physical harm." *Id*. The Supreme Court further explained that "it does not matter" that "the harm occurs

---

[16] Defendant submitted his brief before the Fourth Circuit issued its decision in *Irby*. But as the Fourth Circuit noted, the *Irby* panel was "not the first court to recognize that *Castleman* undermined *Torres-Miguel*'s reasoning[.]" *Irby*, 2017 WL 2366996, at *6 n.7 (collecting cases, including *United States v. McDaniels*, 147 F. Supp. 3d 427, 433 (E.D. Va. 2015) ("[T]he Supreme Court rejected the rationale of *Torres-Miguel* in [*Castleman*].")).

17

indirectly, rather than directly," noting that under the defendant's reasoning, "one could say that pulling the trigger on a gun is not the 'use of force' because it is the bullet, not the trigger, that actually strikes the victim." *Id.* Thus, the Supreme Court's reasoning in *Castleman* applies here and renders unavailing defendant's argument based on *Torres-Miguel*.[17]

In response, defendant attempts to distinguish *Castleman* and resuscitate *Torres-Miguel* by noting that the relevant statute in *Castleman*—18 U.S.C. § 921(a)(33)—had incorporated the *common law* definition of force, which requires only "offensive touching," *Castleman*, 134 S. Ct 140, rather than "violent force," which requires force "capable of causing physical pain or injury to another person," *Curtis Johnson*, 559 U.S. at 140. Thus, in defendant's view, *Castleman*'s discussion of *common law* force does not undermine *Torres-Miguel*'s discussion of *violent* force. But the Fourth Circuit foreclosed such an argument in its recent *Irby* opinion. *See* 2017 WL 2366996. The *Irby* panel rejected a defendant's contention that federal retaliatory murder—"the unlawful killing of a human being with malice aforethought"—does not require the use of force "capable of causing physical pain or injury to another person." *Irby*, 2017 WL 2366996, at *3 (citing 18 U.S.C. § 1513 (the retaliatory murder statute); 18 U.S.C. § 1111 (defining murder); and *Curtis Johnson*, 559 U.S. at 140 (defining "violent force")). In doing so, the *Irby* panel expressly held that "the distinction … dr[awn] in *Torres-Miguel* between indirect and direct applications of force … no longer remains valid in light of *Castleman*'s explicit rejection of such

---

[17] Defendant also relies on *United States v. Lopez-Reyes*, 945 F. Supp. 2d 658 (E.D. Va. 2013), which held that Va. Code § 18.2-51 was not categorically a crime of violence. The *Lopez-Reyes* decision reasoned that § 18.2-51 "does not necessarily involve the …. use or threatened use of physical force" because the statute could be violated "by any means, including, for example, by poison[.]" *Id.* at 663. But *Lopez-Reyes* was a pre-*Castleman* case and thus is unpersuasive here.

18

a distinction." *Id.* at *6. This was so even though the statutes at issue in *Irby* required *violent* force, not just common law force. *See id.* Thus, the *Irby* panel concluded that "one cannot unlawfully kill another human being without a use of physical force capable of causing physical pain or injury to another[.]" *Id.* at *7. The same logic obtains here: one cannot unlawfully cause bodily harm—*i.e.*, bodily hurt or injury—intending "to maim, disfigure, disable, or kill," without a use of physical force capable of causing physical pain or injury to another. *See* Va. Code § 18.2-51; *Irby*, 2017 WL 2366996, at *7.[18]

Put succinctly, defendant's conviction under Va. Code § 18.2-51 constitutes a crime of violence under the force clause of U.S.S.G. § 4B1.2.

IV.

In sum, defendant's § 2255 motion must be denied as untimely. Furthermore, defendant's argument regarding the Virginia maiming statute is meritless. Nevertheless, if the Supreme Court in the future announces a new rule of constitutional law applicable to the mandatory Guidelines and § 4B1.2's residual clause, and makes that rule retroactive on collateral review, a subsequent § 2255 petition may well succeed with respect to defendant's federal kidnapping conviction.

An appropriate Order will issue.

Alexandria, Virginia
June 19, 2017

T. S. Ellis, III
United States District Judge

---

[18] This opinion appears to join a growing judicial consensus that Va. Code § 18.2-51 is categorically a crime of violence requiring the use of physical force capable of causing physical pain or injury to another. *See, e.g., United States v. Candiloro*, 322 F. App'x 332 (4th Cir. 2009); *United States v. Harrison*, 809 F.3d 420 (8th Cir. 2015) *United States v. Cobo-Raymundo*, 493 F. App'x 848 (9th Cir. 2012); *Taylor v. United States*, No. Civ.A. 7:05-cv-00244 (W.D. Va. Aug. 11, 2005).

19